IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

TAYVON WHITT,
*Petitioner*

Criminal No. ELH-22-00139
Civil No. ELH-25-00126

**MEMORANDUM OPINION**

This Memorandum Opinion resolves a post-conviction petition filed by defendant Tayvon Whitt under 28 U.S.C. § 2255. ECF 77 ("Motion"). In a 52-page submission,[1] Whitt seeks to vacate his conviction for possession of firearms by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). His arguments are based largely on the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). In particular, Whitt challenges the constitutionality of § 922(g)(1), both facially and as applied to him. He also asserts a claim of ineffective assistance of counsel, based on related arguments.

[1] Whitt's form Motion (ECF 77 at 1-12) is accompanied by a scholarly memorandum of law that was used for another defendant in another case. *See id.* at 13-52. Whitt states, *id.* at 13: "Petitioner has the same arguments as Dunlapp [sic] and others and this Brief is from those case's [sic] that support Petitioner's claims, as well as new arguments throughout." In various places, Whitt has penned or typed in his own name and/or his specific offense. *See*, *e.g.*, ECF 77 at 14, 15, 17, 27, 28, 34, 50.

The government advises (ECF 88 at 6) that Whitt's submission here was actually an appellate brief submitted by the defendant, Dunlap, to the Eleventh Circuit in the case of *United States v. Dunlap*, No. 23-12883, 2024 WL 578754. In *Dunlap*, on direct appeal, the Eleventh Circuit rejected the arguments advanced by Dunlap, which are essentially the same as the ones advanced here by Whitt. These include facial and as applied constitutional challenges to 18 U.S.C. § 922(g)(1). *See United States v. Dunlap*, 2024 WL 2176656 (11th Cir. May 15, 2024) (per curiam).

The government opposes the Motion. ECF 88. It contends that defendant's "arguments are procedurally defaulted, and multiple binding opinions conclusively foreclose them on the merits." *Id.* at 1. Defendant replied. ECF 89.

No hearing is necessary. *See* 28 U.S.C. § 2255(b). For the reasons that follow, I shall deny the Motion.

## I. Background

A grand jury in the District of Maryland indicted Whitt in April 2022 on multiple charges: possession of firearms by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count One); possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a) (Count Two); and possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Three). ECF 1.

On June 23, 2022, while Whitt's case was essentially in its infancy, the Supreme Court decided *Bruen*, 597 U.S. 1, holding that the Second Amendment to the Constitution "protect[s] an individual's right to carry a handgun for self-defense outside the home." *Id.* at 10. When a law regulates conduct protected by the Second Amendment, said the Court, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id*. at 17. Notably, however, in referencing the Second Amendment, the Supreme Court spoke of the rights of "law-abiding, responsible citizens." *Id.* at 9. Similarly, in his concurring opinion, Justice Kavanaugh reiterated that nothing about *Bruen* "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 81 (Kavanaugh, J., concurring) (citation omitted).

On January 5, 2024, about eighteen months after *Bruen* was decided, Whitt entered a plea of guilty to the § 922(g)(1) offense (ECF 61), pursuant to a Plea Agreement. ECF 62. The plea

was tendered under Fed. R. Crim. P. 11(c)(1)(C), by which the parties agreed to a sentence of 84 months of imprisonment as the appropriate disposition. *Id.* ¶¶ 9, 10. And, of relevance here, defendant waived all rights to appeal his conviction "on any ground whatsoever." *Id.* ¶ 11(a).

The Plea Agreement contains a stipulation of facts. *Id.* at 10-11. The stipulation establishes that on December 31, 2021, officers in Baltimore County conducted a traffic stop of Whitt's car because of a suspected lapse in automobile insurance. *Id.* at 10. Defendant, who was the driver, could not produce insurance documentation. The officers asked Whitt and his passenger to exit the car so they could conduct a scan with a drug-sniffing canine. *Id.*

Whitt and his passenger exited the car but then fled. *Id*. While fleeing, Whitt threw a bag with approximately 24 grams of cocaine into the bushes. *Id.* In Whitt's vehicle, officers found, among other things, 28 more grams of cocaine and 1.8 pounds of marijuana; $4,241.00 in U.S. currency; multiple cell phones; and drug paraphernalia. *Id.* From the trunk of the vehicle, the officers recovered three firearms: (1) a loaded Polymer P80 9mm handgun with an extended magazine, (2) a loaded Glock 23 .40 caliber handgun with an extended magazine and two additional, loaded magazines, and (3) a loaded Taurus PT945 .45 caliber handgun. *Id.* Additional ammunition was also recovered. *Id.*

The stipulation also reflected that defendant had previously been convicted of a crime punishable by imprisonment for a term exceeding one year. *Id.* at 11. And, he knew of this status when he possessed the firearms and ammunition in issue. *Id.*

According to defendant's Amended Presentence Report (ECF 74, "PSR"), the defendant had a final offense level of 29, and a criminal history category of V. *Id.* ¶¶ 30, 41, ECF 73 (Statement of Reasons). His advisory sentencing guidelines ("Guidelines" or "U.S.S.G.") called for a sentence ranging from 140 to 175 months of imprisonment. *Id.*; *see also* ECF 74, ¶¶ 30, 41,

98; ECF 73. However, at that time, the statutory maximum sentence for the § 924(g)(1) offense was ten years. *Id.* ¶ 98. Therefore, the Guidelines were adjusted to 120 months (ten years), under U.S.S.G. 5G1.1(a).[2] On February 27, 2024, the Court sentenced defendant to the agreed upon term of 84 months of imprisonment. ECF 72.

During the entire pendency of the case in the District Court, defendant never lodged a Second Amendment claim to § 924(g)(1) under *Bruen* or any other theory. Put another way, Whitt never challenged the constitutionality of § 922(g)(1), either facially or as applied. *See* Docket. Moreover, even after proceedings came to an end in the District Court, defendant never lodged an appeal to the Fourth Circuit. *See* Docket. Instead, for the first time, he challenges the constitutionality of the statute in his § 2255 Motion, filed on January 13, 2025.

Additional facts are included, *infra*.

## II. Standards of Review

### A.

Section 2255(a) of Title 28 of the United States Code provides relief to a prisoner in federal custody only on specific grounds: "(1) 'that the sentence was imposed in violation of the Constitution or laws of the United States,' (2) 'that the court was without jurisdiction to impose such a sentence,' (3) 'that the sentence was in excess of the maximum authorized by law,' and (4) that the sentence 'is otherwise subject to collateral attack.'" *See Hill v. United States*, 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255); *see also United States v. Hodge*, 902 F.3d 420, 426 (4th Cir. 2018); *United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015); *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010).

Relief under § 2255 is meant to remedy fundamental constitutional, jurisdictional, or other

[2] The statutory maximum has since been increased to fifteen years of imprisonment.

errors. The petitioner must establish (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law so fundamental as to render the entire proceeding invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). But, "an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting Hill, 368 U.S. at 428). The defendant bears the burden of proving his grounds for collateral relief by a preponderance of the evidence. *See Jacobs v. United States*, 350 F.2d 571, 574 (4th Cir. 1965).

Section 28 U.S.C. § 2255(f) imposes a one-year period of limitations, within which a petitioner must file a post-conviction motion. This one-year period begins on the latest of the following dates: (1) the date on which the petitioner's judgment became final; (2) the date on which any unconstitutional, government-created impediment preventing the petitioner from filing this motion was lifted; (3) the date on which a newly asserted right was recognized by the Supreme Court and made retroactive on collateral review; or (4) the date on which the facts supporting the petitioner's claim for relief "could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(1)-(4); *see, e.g.*, *United States v. Green*, 67 F.4th 657, 663 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 226 (2023); *United States v. Brown*, 868 F.3d 297, 301 (4th Cir. 2017).

The scope of collateral review under § 2255 is narrower than on appeal, and a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman*, 578 U.S. 488, 519 (2016) (Alito, J., concurring) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). "Accordingly, at least as a general rule, federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on direct appeal." *Foster*, 578 U.S. at 519 (citing, *inter alia*, *United States v. Roane*, 378 F.3d 382, 397 n.7 (4th Cir. 2006)). Indeed, "it is well-settled that [a

defendant] cannot 'circumvent a proper ruling . . . on direct appeal by re-raising the same challenge in a § 2255 motion.'" *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013) (quoting *United States v. Linder*, 552 F.3d 391, 396 (4th Cir. 2009)) (ellipsis in *Dyess*); *see United States v. Caro*, 733 F. App'x 651, 659 (4th Cir. 2018) (same).

Failure to raise a claim on direct appeal constitutes a procedural default that bars presentation of the claim in a § 2255 motion, unless the petitioner can demonstrate "cause and actual prejudice resulting from the errors of which he complains," or "actual innocence." *Pettiford*, 612 F.3d at 280 (quoting *United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1999)); *see Bousley v. United States*, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (internal quotations and citations omitted); *Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Reed v. Farley*, 512 U.S. 339, 354 (1994) (stating that "the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"); *Finch v. McKoy*, 914 F.3d 292, 298 (4th Cir. 2019) (discussing requirements for a claim of actual innocence); *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Green*, 67 F.4th at 666; *United States v. McKinney*, 60 F.4th 188, 193 (4th Cir. 2023).

Under the "cause and prejudice" standard, the petitioner must show: (1) cause for not raising the claim of error on direct appeal; and (2) actual prejudice from the alleged error. *Bousley*, 523 U.S. at 622; *see Dretke*, 541 U.S. at 393; *Massaro v. United States*, 538 U.S. 500, 505 (2003); *see also Reed*, 512 U.S. at 354 (stating that "the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"); *Carrier*, 477 U.S. at 496; *Frady*, 456 U.S. at 167-68. In order to show cause for not raising the claim of error on direct appeal, a petitioner must prove that "some objective factor external to the defense

such as the novelty of the claim or a denial of effective assistance of counsel" impeded his counsel's efforts to raise the issue earlier. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *see Carrier*, 477 U.S. at 492 ("[C]ause . . . requires a showing of some external impediment preventing counsel from constructing or raising the claim."); *Mikalajunas*, 186 F.3d at 493 (movant must demonstrate "something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel").

Additionally, the alleged error cannot simply create a possibility of prejudice; the petitioner must show "*actual* and substantial disadvantage" that "infect[s]" the petitioner's "entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original). To illustrate, a claim that "is so novel that its legal basis is not reasonably available to counsel" may constitute cause. *Reed v. Ross*, 468 U.S. 1, 16 (1984); *see McKinney*, 60 F.4th at 193-94. Prejudice does not support relief of a procedural default in the absence of a showing of cause. *Carrier*, 477 U.S. at 494; *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982).

The actual innocence exception "only applies in limited circumstances." *United States v. Jones*, 758 F.3d 579, 583 (4th Cir. 2014). Indeed, it must be "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . ." *Carrier*, 477 U.S. at 496.

To show "actual innocence," the petitioner "must demonstrate actual factual innocence of the offense of conviction, *i.e.*, that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *Mikalajunas*, 186 F.3d at 494 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)); *see also Bousley*, 523 U.S. at 623; *Green*, 67 F.4th at 671. Notably, the petitioner must meet this burden by clear and convincing evidence. *Mikalajunas*, 186 F.3d at 494. In other words, a "petitioner

must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Jones*, 758 F.3d at 583; *see Bousley*, 523 U.S. at 623.

As the Fourth Circuit has said, "[a] valid actual innocence claim 'requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Finch*, 914 F.3d at 298 (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). Moreover, a petitioner must "'demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt, such that his incarceration is a miscarriage of justice.'" *Finch*, 914 F.3d at 298 (quoting *Teleguz v. Pearson*, 689 F.3d 322, 329 (4th Cir. 2012)). It is an "exacting standard," based on a "'holistic judgment about all the evidence'. . . ." *Finch*, 914 F.3d at 299 (quoting *House v. Bell*, 547 U.S. 518, 539 (2006)).

As indicated, defendant's Plea Agreement contains an appeal waiver. Defendant does not assert that this was the basis for his failure to note an appeal. In any event, a court can refuse to enforce an appeal waiver for limited reasons, such as a "miscarriage of justice," when the offense is not a crime. *See United States v. Adams*, 814 F.3d 178, 182 (4th Cir. 2016); *see also McKinney*, 60 F.4th at 192. That is not the situation here.

**B.**

Defendant entered a plea of guilty to a violation of 18 U.S.C. § 922(g)(1), *i.e.*, felon in possession of firearms. In the context of a post-conviction motion, a plea of guilty is significant.

A guilty plea represents an admission by a defendant that "he actually committed the crime" in issue and that "he is pleading guilty because he is guilty." *United States v. Hyde*, 520 U.S. 670, 676 (1997). A guilty plea also constitutes a "waiver of [a defendant's] right to trial

before a jury or a judge." *Brady v. United States*, 397 U.S. 742, 748 (1970). It is "a grave and solemn act . . . ." *Id.*; *see also Bousley*, 523 U.S. at 618.

Thus, to be valid, the plea of guilty must reflect an "intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In order for a guilty plea to be valid, it must be voluntary. *Brady*, 397 U.S. at 748. "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Id.*; *see Bradshall v. Stumpf*, 545 U.S. 175, 183 (2005) (same). Once a guilty plea is entered, however, there is "a strong presumption that the plea is final and binding." *United States v. Lambey*, 974 F.3d 1389, 1394 (4th Cir. 1992).

A "valid guilty plea relinquishes any claim that would contradict the admissions necessarily made upon entry of a voluntary guilty plea." *Class v. United States*, 583 U.S. 174, 183 (2018); *see United States v. Pittman*, 125 F.4th 527, 533 (4th Cir. 2025) (stating that "[a] criminal defendant who pleads guilty waives any argument that the statute of conviction does not cover that defendant's conduct."). Indeed, a defendant is "bound," absent clear and convincing evidence to the contrary, "by the representations he made under oath during a plea colloquy." *Fields v. Attorney Gen. of Md.,* 956 F.2d 1290, 1299 (4th Cir. 1992); *see Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977); *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005). Thus, "a defendant's solemn declarations in open court affirming a [plea] agreement . . . 'carry a strong presumption of verity.'" *Lemaster*, 403 F.3d at 221 (quoting *Blackledge*, 431 U.S. at 74); *see United States v. DeFusco*, 949 F.2d 114, 119 (4th Cir. 1992) (stating that defendant's statements at the plea hearing are "strong evidence of the voluntariness of his plea.").

Conclusory allegations in a § 2255 petition that are contrary to testimony provided at a Rule 11 hearing are "palpably incredible and patently frivolous or false." *Lemaster*, 403 F.3d at 222. As the Fourth Circuit has explained, "courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." *Id.*; *see also Blackledge,* 431 U.S. at 74; *United States v. White*, 366 F.3d 291, 295-96 (4th Cir. 2004); *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003).

When, as here, a judgment of conviction based upon a guilty plea is later subjected to a collateral attack, such as by a § 2255 motion, the court's inquiry concerning the validity of the guilty plea is "ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989). A plea cannot be "voluntary in the sense that it constituted an intelligent admission . . . unless respondent received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). In *Marshall v. Lonberger*, 459 U.S. 422 (1983), the Court recognized that "'it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.'" *Id.* at 436 (1983) (quoting *Henderson*, 426 U.S. at 647) (internal quotations omitted).

The Fourth Circuit has acknowledged that, on post-conviction, a defendant who has pled guilty "has an incentive to claim, in retrospect, that the result of the plea process would have been different regardless of whether that claim is, in fact, true." *United States v. Murillo*, 927 F.3d 808, 815 (2019); *cf. Lee v. United States*, 582 U.S. 357, 369 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies."). Therefore, "to prevent criminal defendants with bargainer's remorse,

from simply claiming they would not have taken a deal but for a bit of bad advice," the defendant must "provide evidence of [his] sincerity." *Murillo*, 927 F.3d at 816. In particular, the defendant "must point to evidence that demonstrates a reasonable probability that, with an accurate understanding of the implications of pleading guilty, he would have rejected the deal." *Id.*; *see United States v. Perdue*, 110 F.4th 662, 670 (4th Cir. 2024).

In the context of a plea bargain, "the defendant is the master of the outcome." *Murillo*, 927 F.3d at 815; *see Garrett Co. v. DePasquale*, 443 U.S. 368, 382 n.10 (1979); *United States v. Hashimi*, 110 F.4th 621, 627 (4th Cir. 2024). Therefore, "[t]he prejudice analysis in the context of the plea-bargaining process requires a fact-based evaluation of the weight of the evidence." *Id.* And, the "plea agreement language and sworn statements must be considered in their context[.]" *Id.* at 817; *see Lemaster*, 403 F.3d at 221-22.

**C.**

The Sixth Amendment to the Constitution guarantees a criminal defendant the right to the effective assistance of competent counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see Buck v. Davis*, 580 U.S. 100, 118 (2017); *United States v. Ductan*, 800 F.3d 642, 648 (4th Cir. 2015). The plea bargaining process is regarded as "an essential aspect of the administration of criminal justice . . . ." *United States v. Lewis*, 633 F.3d 262, 269 (4th Cir. 2011). Therefore, the Sixth Amendment right to counsel extends to the plea-bargaining process. *McMann v. Richardson*, 397 U.S. 749, 771 (1970); *United States v. Murillo*, 927 F.3d 808, 815 (4th Cir. 2019); *United States v. Hall*, 771 App'x 226, 227 (4th Cir. 2019) (per curiam); *see also Missouri v. Frye*, 566 U.S. 133 at 140-44 (2012); *Lafler v. Cooper*, 566 U.S. 156, 162 (2012).

Ineffective assistance of counsel is a well recognized basis for relief under § 2255. *See generally Frye*, 566 U.S. 133; *Lafler*, 566 U.S. 156; *Padilla v. Kentucky*, 559 U.S. 356 (2010).

Failure to raise on direct appeal a claim of ineffective assistance of counsel is not regarded as procedurally defaulted. *Massaro*, 538 U.S. at 509; *see United States v. Faulls*, 821 F.3d 502, 507–08 (4th Cir. 2016). Indeed, such claims ordinarily are not litigated on direct appeal. Claims of ineffective assistance are cognizable on direct appeal "only where the record conclusively establishes ineffective assistance." *United States v. Baptiste*, 596 F.3d 214, 216 n.1 (4th Cir. 2010). Rather, such claims are usually litigated in a § 2255 action to allow for development of the record. *Massaro*, 538 U.S. at 504-06; *United States v. Ladson*, 793 F. App'x 202 (4th Cir. Feb. 12, 2020) (per curiam).

To mount a successful challenge under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged framework set forth in *Strickland*, 466 U.S. at 687–88. *See Harrington v. Richter*, 562 U.S. 86, 104 (2011); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *United States v. McNeil*, 126 F.4th 935, 942 (2025); *United States v. Sutherland*, 103 F.4th 200, 207-08 (4th Cir. 2024); *United States v. Palacios*, 982 F.3d 920, 923 (4th Cir. 2020); *Akande*, 956 F.3d at 260; *United States v. Winbush*, 922 F.3d 227, 229 (4th Cir. 2019); *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017); *United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017). The petitioner must prove his claim by a preponderance of the evidence. *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010); *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

First, the petitioner must show that counsel's performance was constitutionally deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 580 U.S. at 118; *Chaidez v. United States*, 568 U.S. 342, 348 (2013); *Premo v. Moore*, 562 U.S. 115, 121 (2011); *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *McNeil*,

126 F.4th at 942; *Winbush*, 922 F.3d at 229; *Powell*, 850 F.3d at 149; *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *United States v. Dyess*, 730 F.3d 354, 361 (4th Cir. 2013); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011); *see, e.g., United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013).

The first *Strickland* prong, known as the "performance prong," relates to professional competence. The petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms." *Strickland,* 466 U.S. at 688; *see Richter*, 562 U.S. at 104; *Sutherland*, 103 F.4th at 207-08; *Powell*, 850 F.3d at 149; *United States v. Richardson*, 820 F. App'x 225, 226 (4th Cir. 2020) (per curiam). The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

The "first prong sets a high bar." *Buck*, 580 U.S. at 118; *see also Powell*, 850 F.3d at 149. It is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004)). In *Padilla*, the Supreme Court stated, 559 U.S. at 371: "Surmounting *Strickland's* high bar is never an easy task."

To satisfy the high bar, the burden is on the petitioner to establish "'that counsel made errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 687). "Mere deviation from best practices will not do." *United Stats v. Powell*, 134 F.4th 222, 228 (4th Cir. 2025). Moreover, "trial lawyers must have wide latitude in making tactical decisions." *Noland v. French*, 134 F.3d 208, 217 (4th Cir. 1998); *see Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009). Therefore, "strategic choices made after thorough investigation of law and facts relevant to

plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. A "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Buck*, 580 U.S. at 118 (citation omitted); *see Mayhew*, 995 F.3d at 176.

In other words, "'*Strickland* does not guarantee perfect representation, only a reasonably competent attorney.'" *Cox v. Warden*, 102 F.4th 663, 675 (4th Cir. 2024) (quoting *Harrington*, 562 U.S. at 110) (cleaned up). Moreover, "the *Strickland* standard must be applied with scrupulous care," and "the standard of judging counsel's representation is a most deferential one." *Richter*, 562 U.S. at 105; *see Strickland*, 466 U.S. at 689; *United States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019). The *Strickland* Court admonished, 466 U.S. at 689: "It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *See also Premo*, 562 U.S. at 122; *Bell v. Cone*, 535 U.S. 685 (2002).

The *Strickland* Court explained, 466 U.S. at 689, that, unlike "a later reviewing court," it is the boots-on-the-ground trial lawyer who "knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." Thus, "[k]eenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland,* 466 U.S. at 689); *see Cullen v. Pinholster*, 563 U.S. 170, 189 (S. Ct. 2011); *Richter*, 562 U.S. at 104; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015).

A claim of ineffective assistance is evaluated in light of "the strength of case law as it existed at the time of allegedly deficient representation." *Palacios*, 982 F.3d at 924; *see Carthorne*, 878 F.3d at 466. In other words, "[t]o avoid the distorting effects of hindsight, claims under *Strickland's* performance prong are 'evaluated in light of the available authority'" at the relevant time. *Morris*, 917 F.3d at 823 (citation omitted). To be sure, counsel "are obliged to make [] argument[s] that [are] sufficiently foreshadowed in existing case law," but counsel is not deficient "for failing to predict" changes in the law. *Id.* at 824 (alterations in *Morris*; internal quotation marks omitted). After all, "[w]ith the benefit of hindsight, improvements could be made to almost any representation." *Powell*, 134 F.4th at 228.

Under the second *Strickland* prong, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 580 U.S. at 119; *Lafler*, 566 U.S. at 163; *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687; *see Thornell v. Jones*, 602 U.S. 154, 163 (2024) (death penalty case). However, a petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

**D.**

A self-represented litigant is generally "held to a 'less stringent standard' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v.*

*United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Quintero v. Garland*, 998 F.3d 612, 634 (4th Cir. 2021) (same); *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (per curiam) (same).

Pursuant to 28 U.S.C. § 2255(b), the court must hold an evidentiary hearing "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief. . . ." *United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021); *see United States v. McNeil*, 126 F.4th 935, 942 (4th Cir. 2025); *United States v. Sutherland*, 103 F.4th 200, 207 (4th Cir. 2024); *White*, 366 F.3d at 302. But, if the factual record is "murky," a hearing may be required. *United States v. Hashimi*, 110 F.4th 621, 631-32 (4th Cir. 2024).

Generally, a district court has discretion as to whether to hold a hearing, but "a hearing is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record, or when a credibility determination is necessary to resolve the claim[.]" *Mayhew*, 995 F.3d at 176-77; *see United States v. Runyon*, 994 F.3d 192, 208 (4th Cir. 2021) (requiring evidentiary hearing to clarify evidence as to counsel's "strategic choice"). If the district court "denies relief without an evidentiary hearing," the appellate court will "construe the facts in the movant's favor." *United States v. Akande*, 956 F.3d 257, 261 (4th Cir. 2020); *see also United States v. Turner*, 841 F. App'x 557, 559 (4th Cir. 2021) (same).

Whitt asserts that he is "unquestionably entitled to an evidentiary hearing . . . to better assist the Court when reviewing, analyzing and rendering a final decision . . . ." ECF 89 at 3.

However, credibility of witnesses is not in issue. Nor are the material facts in dispute. Therefore, no hearing is necessary.

## III. Discussion

### A. The *Bruen* Claim

#### 1.

Defendant asserts, ECF 77 at 11: "I stand convicted of a crime that Congress didn't have the right to make. Now for the first time I'm challenging this right." Whitt maintains that, in light of *Bruen*, the "offense violates the Second Amendment." *Id.*at 13. Moreover, he maintains that "the constitutionality of § 922(g)(1) under the Second Amendment is jurisdictional." *Id.* at 14 (citing *Class*, 583 U.S. at 179).

According to defendant, 18 U.S.C. § 922(g)(1) is facially unconstitutional in light of Supreme Court rulings and because the plain text of the Second Amendment "covers the possession of firearms by people who are not necessarily law-abiding." *United States v. Dunlap*, 2024 WL 2176656, at *1 (11th Cir. May 15, 2024) (per curiam) (construing *Dunlap's* appellate brief, which is the same as defendant's submission).[3] Alternatively, Whitt argues that, even if the statute is facially constitutional, "it is unconstitutional as applied to him because there is no historical tradition that supports prohibiting firearm possession by persons with his kind of criminal history." *Id.*; *see also* ECF 89 at 5-6.

In defendant's reply (ECF 89), he contends that "the framework established for the lower courts to exercise in review [of] Second Amendment challenges wasn't available to him, or know [sic] to him at the time of the proceedings, nor cases using the Bruen framework ruling . . . ." *Id.*

[3] Because defendant has used the appellate brief submitted to the Eleventh Circuit by counsel for Mr. Dunlap, I have referenced the Eleventh Circuit's interpretation of that brief.

at 2. Therefore, he complains that he should not be found to have procedurally defaulted. *Id.* Moreover, he contends that his Motion is timely under "28 U.S.C. § 2255(f)(4)(a)(4) because the dates on which the facts supporting the claims presented in his argumenta [sic] could not have been discovered until Movants [sic] research of recently decided cases . . . ." *Id.* at 4.

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

A facial challenge constitutes a "claim that the statute is unconstitutional *not* as it applies to [the defendant's] own conduct, but rather 'on its face,' as it applies to the population generally." *United States v. Miselis*, 972 F.3d 518, 530 (4th Cir. 2020) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)) (emphasis in *Miselis*) , *cert. denied*, 593 U.S. 1044 (2021). Ordinarily, a facial challenge requires a showing that "no set of circumstances exists under which the [statute or regulation] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see United States v. Stevens*, 559 U.S. 460, 472 (2010); *Wash. State Grange*, 552 U.S. at 449; *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 282 (4th Cir. 2013) (en banc). This is a "heavy burden" to meet, *Salerno*, 481 U.S. at 745, and such claims are "'disfavored.'" *Miselis*, 972 F.3d at 530 (citation omitted).

In contrast, an as-applied challenge is "based on a developed factual record and the application of a statute to a specific person[.]" *Richmond Med. Ctr. for Women v. Herring*, 570 F.3d 165, 172 (4th Cir. 2009) (en banc). "It is axiomatic that a statute may be invalid as applied to one state of facts and yet valid as applied to another." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329 (2006) (internal quotation marks omitted).

In the seminal case of *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court determined that the Second Amendment protects “the right of law-abiding, responsible citizens to use arms in defense of hearth and home.” *Id.* at 635. The “central” aspect of this right is the ”inherent right to self-defense.” *Id.* at 628. The Court noted, however, that although the right to bear arms presumptively “belongs to all Americans,” *id.* at 581, as with other fundamental rights, “the right secured by the Second Amendment is not unlimited.” *Id.* at 626.

The Court emphasized, *id.*: “[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.” According to the Court, such restrictions are “presumptively lawful regulatory measures,” and the list is not exhaustive. *Id.* at 627 n.26. Of import here, the Court identified a non-exhaustive list of “presumptively lawful regulatory measures,” including the “longstanding prohibitions on the possession of firearms by felons and the mentally ill.” *Id*. at 626-27 & n.26.

Two years after *Heller*, in *McDonald v. City of Chicago, Illinois*, 561 U.S. 742, 778 (2010), the Supreme Court reiterated that the Second Amendment is a fundamental right, applicable to the states pursuant to the Due Process Clause of the Fourteenth Amendment. But, the Court again made clear that the Second Amendment permits “reasonable firearms regulations.” *Id.* at 785. The Court reiterated *Heller*'s “assurances” about restrictions on felons and the mentally ill. *Id.* at 786. The Second Amendment's scope excludes those people because it codified a “right of law-abiding, responsible citizens.” *Id.*

In the period following *Heller* and *McDonald*, but prior to *Bruen*, the federal appellate courts uniformly utilized a “two-step” approach to assess the constitutionality of firearms

regulations, applying strict or intermediate scrutiny and conducting a means-ends analysis to determine whether the state's interest in a regulation was sufficient to overcome whatever burden the law placed on an individual's Second Amendment right. *See Bruen*, 597 U.S. at 17-18. In *Bruen*, however, the Supreme Court concluded that this two-step approach was "one step too many." *Id.* at 19.

The Court in *Bruen* analyzed the constitutionality of a New York firearm licensing scheme that dated to 1911, concerning the public carrying of a concealed firearm. Under that law, in order to obtain a permit to carry a concealed handgun in public, an applicant was required to demonstrate "proper cause," *i.e.*, "a special need for self-protection distinguishable from that of the general community." *Id.* at 94 (Breyer, J., dissenting). The Court concluded that New York could not point to "an American tradition justifying the State's proper cause requirement." *Id.* at 70. Therefore, the Court held that the state's statute violated the Second Amendment. *Id.* at 70-71. In making that ruling, the Court put in place a new test to govern Second Amendment challenges.

The Court rejected the "'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny," around which the Courts of Appeals had, prior to *Bruen*, "coalesced." *Id.* at 17. It said, *id.* (citation omitted).

> [W]e decline to adopt that two-part approach. In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulations, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."[4]

---

[4] Underscoring the significance of its pronouncement, the Supreme Court reiterated almost the identical statement a few pages later, *Bruen*, 597 U.S. at 24 (citation omitted):

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then

*Bruen* "requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 26. To make this assessment, a court must engage in a two-pronged analysis.

A court must first determine whether "the Second Amendment's plain text covers an individual's conduct." *Id.* at 17. If it does not, the analysis ends, and the government's regulation is valid. However, if the conduct at issue is covered by the Amendment's text, the conduct is presumed protected, and the government must then demonstrate that the regulation "is consistent with this Nation's historical tradition of firearm regulation." *Id.* Only if a firearm regulation is consistent with this Nation's historical traditional may a court conclude that the individual's conduct falls outside the protection of the Second Amendment. *Id.*

Nevertheless, echoing *Heller*, the *Bruen* Court described the right under the Second Amendment as one belonging to law-abiding citizens. *See, e.g., Bruen*, 597 U.S. at 8 (stating that *Heller* and *McDonald* "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense"); *id.* at 27 (quoting *Heller*'s statement that the Second Amendment protects "'the right of law-abiding, responsible citizens to use arms' for self-defense"); *id.* at 26 (stating that the historical inquiry should consider "how and why the regulations burden a law-abiding citizen's right to armed self-defense").

Indeed, in *Bruen*, 597 U.S. at 31-32, the Court observed that the parties did not dispute "that petitioners Koch and Nash—two ordinary, law-abiding, adult citizens—are part of 'the

---

> justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

people' whom the Second Amendment protects." In other words, the Second Amendment covered the petitioners because they were law-abiding, responsible citizens. *See Wolford v. Lopez*, 609 U.S. 185, 193 (2026) (recognizing that the Second Amendment right is not "absolute"); *United States v. Rahimi*, 602 U.S. 680, 773 (2024) (concluding, in a facial challenge to § 922(g)(8), that an individual who poses "a credible threat to the physical safety of an intimate partner" may be barred by a restraining order from possession of a firearm, consistent with the Second Amendment); *see*, *e.g.*, *United States v. Smith*, 188 F.4th 770, 776 (4th Cir. 2026); *United States v. Jacobs*, 166 F.4th 395, 397 (4th Cir. 2026); *United States v. Nutter*, 173 F.4th 224 (4th Cir. 2025); *United States v. Canada*, 123 F.4th 159 (4th Cir. 2024); *United States v. Hunt*, 123 F.4th 697 (4th Cir. 2024); *Cf. Bianchi v. Brown*, 111 F.4th 438, 441 (4th Cir. 2024) (en banc) (concluding that assault weapons "fall outside the ambit of protection offered by the Second Amendment . . . ."); *United States v. Price*, 111 F.4th 392, 396 (4th Cir. 2024) (en banc) (upholding facial constitutionality of § 922(k), which bars possession of a firearm with an obliterated serial number).

By June 2024, the Fourth Circuit expressly rejected the claim that 18 U.S.C. § 922(g)(1) is facially unconstitutional. *See Canada*, 123 F.4th 159. The *Canada* Court made plain that such a challenge is devoid of merit, declaring, in no uncertain terms, *id.* at 161: "[W]e reject [defendant's] assertion that Section 922(g)(1) is 'unconstitutional, root and branch.' The law of the Second Amendment is in flux, and courts . . . are grappling with many difficult questions in the wake of [*Bruen*] and [*Rehimi*]. But the facial constitutionality of Section 922(g)(1) is not one of them. Indeed, no federal appellate court has held that Section 922(g)(1) is facially unconstitutional, and we will not be the first." (Alterations added; citation omitted).

A few months later, in *Hunt*, 123 F.4th 697, the Fourth Circuit rejected an as-applied constitutional challenge to § 922(g)(1). The Court said, *id.* at 702: "Section 922(g)(1) would pass constitutional muster even if we were unconstrained by circuit precedent."

I need not delve further into defendant's substantive challenge to the constitutionality of 18 U.S.C. § 922(g)(1). There is no merit to it. Defendant never advanced a challenge to § 924(g)(1). But, if he had done so, he would not have succeeded.

**2.**

Alternatively, I readily agree with the government that the constitutional challenge to § 924(g) is procedurally defaulted.

Defendant asserts that "the constitutionality of § 924(g)(1) under the Second Amendment is jurisdictional." ECF 77 at 14. He relies on *Class*, 583 U.S. 174, to justify his belated constitutional challenge.

With respect to a defendant who pleads guilty after unsuccessfully litigating a constitutional challenge to a statutory charge, the Supreme Court has said that "a guilty plea by itself does not bar" a defendant from claiming, *on direct appeal*, that "the statute of conviction" is unconstitutional, thereby "call[ing] into question the Government's power to constitutionally prosecute him." *Class*, 583 U.S. at 176, 181-82. In *Class*, unlike in this case, the issue was raised on appeal. Moreover, unlike in this case, the text of the plea agreement in *Class* did not bar an appeal. *Id.* at 184-85; *see Pittman*, 125 F.4th at 530.

The *Pittman* Court has recognized, 125 F.4th at 531, that "'a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.'" (Citation omitted). Unlike in this case, "the defendant in *Class* had made a timely assertion" of the constitutional argument that "he later urged

on appeal." *Id.* at 532 (citing *Class*, 583 U.S. at 176). The Fourth Circuit concluded in *Pittman*, 125 F.4th at 532, that "*Class* does not disturb the operation of normal forfeiture rules."

*Class*, on which defendant relies, is distinguishable from this case. Whitt did not litigate the issue in the District Court. Nor did he note an appeal to the Fourth Circuit. And, his Plea Agreement contained a waiver of his right to appeal his conviction. Under *Pittman*, 125 F.4th at 532, he has forfeited his claim. In the context of § 2255, his claim is procedurally defaulted. I explain below.

*Bruen* was decided on June 23, 2022, shortly after defendant was indicted. Defendant did not plead guilty until January 5, 2024. He had ample time to raise a *Bruen* claim. He never did so.

To demonstrate cause, the defendant must rely on "something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *Mikalajunas*, 186 F.3d at 493. Although "a claim that is so novel that its legal basis is not reasonably available to counsel may constitute cause," a claim is not novel when, as here, "the Federal Reporters were replete with cases involving [similar] challenges." *Bousley*, 523 U.S. at 622.

The novelty standard is a high bar. *Poyner v. Murray*, 964 F.2d 1404, 1424 (4th Cir. 1992). Whitt's claim is not novel.

After *Bruen*, and before defendant pleaded guilty, the courts in this circuit and elsewhere saw many challenges to the constitutionality of 18 U.S.C. § 922(g)(1) and related statutes in § 922(g). *See, e.g., Collins v. Garland*, 699 F. Supp. 3d 409, 415 (D. Md. 2023) ("It is clear from *Bruen* that the Supreme Court did not intend felons to be among 'the people' whose conduct the Second Amendment protects."); *United States v. Costianes*, 673 F. Supp. 3d 756 (D. Md. 2023) (rejecting constitutional challenge to § 922(g)(3) based on *Bruen*); *Alexander v. United States*,

RDB-19-0020, 2023 WL 6845424, at *8 (D. Md. Oct. 17, 2023) (concluding that "§ 922(g)(1) is constitutional" because "convicted felons are not within the class of persons contemplated by the Second Amendment"); *Cusick v. U.S. Dep't of Justice*, TDC-22-1611, 2023 WL 5353170, at *5 (D. Md. Aug. 18, 2023) (concluding that the conduct covered by § 922(g)(1) is outside the scope of rights covered by the Second Amendment); *United States v. Riley*, 635 F. Supp. 3d 411, 428 (E.D. Va. 2022) ("Before and after *Bruen*, no circuit has held § 922(g)(1) unconstitutional as applied to a convicted felon. This Court finds no ground to be the first."); *United States v. Daniels*, 1:03-cr-00083-MR, 2022 WL 5027574, at *4 (W.D.N.C. Oct. 4, 2022) ("Nothing in the *Bruen* decision, however, casts doubt on 'the longstanding prohibitions on the possession of firearms by felons.'"); *see also United States v. Ingram*, 623 F. Supp. 3d 660 (D. S.C. 2022) (upholding constitutionality of § 922(g)); *United States v. Nutter*, 624 F. Supp. 3d 636 (S.D. W. Va. 2022) (concluding that § 922(g)(9) does not violate the Second Amendment); *United States v. Grinage*, JKP-21-399, 2022 WL 17420390, at *5 (W.D. Tex. Dec. 5, 2022) (explaining that *Heller* and *Bruen* "lead[] the Court to conclude convicted felons like Grinage are not included in 'the people' protected by the Second Amendment"); *United States v. Young*, 639 F. Supp. 3d 515, 524 (2022) ("*Bruen*, *Heller* and *McDonald* dictate that Defendant's alleged conduct does not fall within the scope of the Second Amendment's protections due to his felony drug convictions."); *United States v. Grant*, MGL-22-161, 2022 WL 16541138, at *3 (D.S.C. Oct. 28, 2022) ("By distinguishing non-law-abiding citizens from law-abiding ones, the dicta in *Heller* and *McDonald* clarifies the bounds of the plain text of the Second Amendment."); and *see United States v. Jackson*, 661 F. Supp. 3d 392 (D. Md. 2023) (upholding constitutionality of § 922(n)).

The cases cited above were among the many in this Circuit and elsewhere that were decided well before defendant pleaded guilty. Defendant's claim that the issue was not known or available is fallacious.

*United States v. Dimkpa*, 169 F.4th 228 (4th Cir. 2026), is instructive as to procedural default. In that case, a physician pleaded guilty to the unlawful distribution of oxycodone, in violation of 21 U.S.C. § 841(a)(1). *Id.* at 230. Three years later, in *Ruan v. United States*, 597 U.S. 4501 (2022), the Supreme Court held that the scienter provision in 21 U.S.C. § 841 "requires the government to prove that a physician knew he was acting in an unauthorized manner when prescribing a controlled substance . . . ." *Id.* Thereafter, *Dimkpa* filed a § 2255 motion, arguing that his "guilty plea was not knowing and voluntary because he was not informed" of the scienter requirement. *Id.*

Unlike in this case, when Dimkpa pled guilty the case at issue—*Ruan*—had not yet been decided by the Supreme Court. Here, *Bruen* was decided shortly after Whitt was indicted and eighteen months before he pleaded guilty. Even so, in *Dimkpa*, the legal basis for the claim was deemed "reasonably available" to the defendant. Therefore, the "*mens rea* argument was not sufficiently novel to constitute cause for [the defendant's] procedural default." *Id.*

In reaching that result, the Fourth Circuit observed that the law need not be fully settled in the context of a procedural default issue. *Id.* at 233. It said, *id.*: "The law is 'often in a state of flux' and the 'mere fact that certain legal principles are unsettled' at the relevant time 'does not deprive a competent attorney of a reasonable basis for asserting a claim.'" (Citation omitted) (cleaned up). In other words, "a claim is not sufficiently 'novel' to qualify as cause for a default where prior Supreme Court decisions provided a defendant with the 'essential legal tools' for his claim. *Id.* at 234 (citation omitted).

Of relevance, three months before Dr. Dimkpa pleaded guilty, the Supreme Court had "embraced" a "strikingly similar *mens rea* claim" in *Rehaif v. United States*, 588 U.S. 225 (2019). In *Rehaif*, the Supreme Court held that in a prosecution under 18 U.S.C. § 924(a)(2) and 18 U.S.C. § 922(g), the government must prove both that the defendant knew he possessed a firearm and that he "knew he was within a class of persons prohibited from possessing a firearm under § 922(g)." *Dimkpa*, 169 F.4th at 232 (citing *Rehaif*, 588 U.S. at 227, 229).

The Fourth Circuit instructed that "'reasonable availability' does not demand an exact match." *Dimkpa*, 169 F.4th at 236 (citation omitted). It is enough if the defendant and his lawyer have the "tools to construct their [] claim." *Id.* (alteration in *Dimkpa*) (citation omitted). The Court concluded that, in light of *Rehaif*, the defendant's claim was reasonably available to him and therefore it was procedurally defaulted.

*Dimkpa* compels the conclusion here that defendant's claim is procedurally defaulted. As indicated, *Bruen* was decided about a year and a half *before* defendant pleaded guilty. Defendant had far more available to him to construct a Second Amendment claim than did the defendant in *Dimkpa*, who would have had to reason by analogy to a completely unrelated statute. In this case, the very issue defendant claims he could not have raised was, in actuality, litigated in countless courts *before* defendant entered his plea of guilty. The challenges in those cases were prompted by a decision of the Supreme Court based on the same constitutional amendment on which defendant's claim is founded.

In short, Whitt had available the essential legal tools to make his claim. He cannot establish cause to excuse his procedural default.

### 3.

Whitt cannot show actual innocence. To establish actual innocence, Whitt must show "factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. In other words, he must show that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *United States v. Harris*, 183 F.3d 313, 318 (4th Cir. 1999) (citing *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995)) (internal quotation marks omitted). Whitt offers no factual basis to challenge the evidence supporting his otherwise valid § 922(g)(1) conviction. *See, e.g., Harris*, 183 F.3d at 318 (no actual innocence where the defendant "points to no evidence that gives rise to the inference that the gun belonged to anyone other than [him] or that anyone other than [him] would have carried the gun to the hotel room").

The government claims that, in the plea agreement context, Whitt must also show that he is actually innocent not only of the charge on which he was convicted, but also of the more serious charges under 21 U.S.C. § 841(a) and 18 U.S.C. § 924(c) that were dismissed because of the Plea Agreement. *See Bousley*, 523 U.S. at 624. I need not resolve this contention. But, I agree that defendant does not question the evidence supporting the § 841(a) or § 924(c) offenses. And, those offenses depend on the exact same evidence on which defendant's § 922(g)(1) conviction rests.

## B. Ineffective Assistance of Counsel

In order to prevail on an ineffective assistance of counsel claim, defendant must show that his counsel's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. *Mikalajunas*, 186 F.3d at 493 (citing, 466 U.S. 668, 687 (1984)). I discussed the standard earlier, at length. Whitt cannot satisfy either prong.

As to performance, counsel does not perform deficiently by "failing to object" if it "would have been futile for counsel to have done so." *Oken v. Corcoran*, 220 F.3d 259, 269–70 (4th Cir. 2000). "Counsel is not required to engage in the filing of futile motions." *Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005) (citation omitted).

The Supreme Court in *Bruen* did not upend the validity of the felon-in-possession statute. *See Bruen*, 597 U.S. at 9 (noting that the Second Amendment proteciton applies to "law-abiding, responsible citizens"); *id.* at 81 (Kavanaugh, J., concurring) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ."); *McDonald*, 561 U.S. at 786 ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons . . . .' We repeat those assurances here."); *Heller*, 554 U.S. at 626 ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearm sby felons . . . .").

Since Whitt's guilty plea, the Fourth Circuit has debunked the merits of such a challenge. It unequivocally held in *Canada*, 123 F.4th at 161, that § 922(g)(1) is facially constitutional. The Court said, *id.*: "No federal appellate court has held that Section 922(g)(1) is facially unconstitutional, and we will not be the first." Thereafter, the Court also foreclosed an as-applied challenge, stating: "These assurances by the Supreme Court, and the history that supports them, reinforces our conclusion that there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)." *Hunt*, 123 F.4th at 708 (cleaned up). Because a *Bruen* challenge had no chance of succeeding, Whitt cannot show deficient performance by his attorney.

In short, a *Bruen* challenge would have been futile. On this basis, Whitt cannot establish deficient performance.

As to prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693–94. Because a *Bruen* challenge had no reasonable probability of success, Whitt cannot demonstrate *Strickland* prejudice.

**B. Certificate of Appealability**

In summary, I shall deny the Motion to Vacate (ECF 77).

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant as to a post-conviction claim. A COA is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *Hadden*, 475 F.3d at 659. In other words, unless a COA is issued, a petitioner may not appeal the court's decision in a § 2255 proceeding. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, 580 U.S. 100, 115 (2017). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDonald*, 529 U.S. 473, 484 (2000).

In my view, Whitt has not made a substantial showing of the denial of his constitutional rights. Therefore, I decline to issue a COA.[5]

An Order follows.

Date: November 6, 2026

/s/
Ellen L. Hollander
United States District Judge

[5] Although this Court denies a COA, this ruling does not preclude Whitt from seeking a COA from the appropriate appellate court, *i.e.*, the United States Court of Appeals for the Fourth Circuit.